UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COLUMBIA AIR SERVICES, INC.,

               Plaintiff,

v.

FIDELITY MANAGEMENT TRUST
COMPANY,

               Defendant.

CIVIL ACTION
No. 1:07-cv-11344-GAO

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

Defendant Fidelity Management Trust Company ("FMTC") respectfully submits this memorandum in support of its Motion to Dismiss Plaintiff's Class Action Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### INTRODUCTION AND SUMMARY OF ARGUMENT

The central claim in this case is that FMTC breached fiduciary duties under ERISA because it was "overpaid" for servicing a 401(k) plan ("the Plan") sponsored by plaintiff, thus receiving "excessive compensation." (*See, e.g.*, Complaint ("Compl.") ¶¶ 3, 24, 29(b).) The claim rests solely on the allegation that in addition to receiving payments from the Plan pursuant to its Service Agreement, FMTC also received a "share of fees" received by others from the Fidelity-brand mutual funds[1] which, according to the very same Service Agreement, were the exclusive investment options for Plan participants. (*Id.* ¶ 3.) In fact, FMTC received no such payments. The Complaint's core allegation is simply false. But even if assumed to be true for

---

[1] "Fidelity-brand" mutual funds refer to funds advised by a Fidelity Management and Research Co., an affiliate of FMTC

the purposes of this Rule 12 motion, it does not matter as plaintiff's claims are fundamentally defective on many levels and must be dismissed.

First, despite its conclusory assertions, the Complaint fails to allege a plausible claim that the compensation received by FMTC was unreasonable or otherwise improper.  Instead, plaintiff suggests that any payments from mutual fund fees that FMTC supposedly received were inherently excessive in that they came on top of explicit FMTC fees identified in the Plan's Service Agreement.  This theory, however, founders on the fact that, via the Service Agreement, plaintiff selected a line-up of investment options consisting solely of Fidelity-branded mutual funds, thus ensuring that additional compensation would go to the overall Fidelity business enterprise at rates specified in the mutual fund prospectuses which plaintiff reviewed.  As a result, plaintiff's grievance is, at best, with the manner in which Fidelity chose to allocate its revenues from those fully-disclosed fees among its constituent entities—a matter that has no impact on the Plan and no significance under ERISA.

Second, plaintiff's nonsensical breach of fiduciary duty claims fail in a more fundamental way:  FMTC was simply not an ERISA fiduciary with respect to the challenged conduct.  FMTC was not a fiduciary in negotiating its compensation with plaintiff; plaintiff had that responsibility.  Similarly, it was plaintiff, not FMTC, which selected mutual fund investment options for the Plan, and therefore had the fiduciary responsibility to determine the reasonableness of the overall fee and service arrangement.  Because plaintiff has not alleged (and cannot allege) that FMTC was acting as a fiduciary in negotiating the Service Agreement and its compensation provisions, plaintiff's ERISA fiduciary claims go nowhere.

Finally, even if the fatal flaws in plaintiff's claims for its own account could be overlooked (they cannot), plaintiff's class allegations should be dismissed.  Plaintiff has a

fiduciary relationship only with its own employer-sponsored 401(k) plan, and thus is without standing under ERISA to pursue claims on behalf of all other "defined contribution plans for which [FMTC] serves or has served as trustee[.]" (Compl. ¶ 27.) Moreover, class litigation is not a "superior" means of resolving plaintiffs' concerns, within the meaning of Rule 23(b)(3). Because the decisions of the fiduciaries of numerous other plans to retain FMTC necessarily involved considerations unique to each plan, plaintiff's challenge to the propriety of FMTC's compensation under each of those arrangements is simply not suitable for class treatment.

For the reasons that follow, plaintiff's Complaint must be dismissed in its entirety.

## BACKGROUND

## I.      The Columbia 401(k) Plan.

The Columbia Group of Companies 401(k) Retirement Savings Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). (Compl. ¶ 10.) It is also a "401(k) plan," designed to comply with § 401(k) of the Internal Revenue Code, 26 U.S.C. § 401(k) (*id*.), under which employees make pre-tax contributions from their wages that are matched by contributions from their employer (typically the "plan sponsor"). *See PBGC v. LTV Corp.*, 496 U.S. 633, 637 n.1 (1990) (discussing defined contribution plans). These contributions are allocated to individual accounts maintained for each employee. *Id.* A 401(k) plan's fiduciary (here, plaintiff) selects the investment options (also called the investment "lineup") that will be made available under the plan, which usually include a range of mutual funds. Plan "participants" (typically current or former employees) choose how to invest their accounts across one or more of the available investment options.

Plaintiff is both the Plan's sponsor and administrator. (Compl. ¶ 1.) The Plan Document provides that plaintiff, in its role as plan administrator, is the Plan's "named fiduciary," *see*

ERISA § 402(a), 29 U.S.C. § 1102(a), and has powers and responsibilities over the management and operation of the Plan.  (Plan Document, § 19.04.)[2]

## II.      FMTC's Relationship to the Plan.

FMTC serves as directed trustee to the Plan.  (*Id.* ¶ 17.)  Plaintiff and FMTC have also entered into a Service Agreement under which FMTC provides certain services to the Plan, including: contribution and loan processing, enrollment and education services, and other recordkeeping tasks, pursuant to a fee schedule.  (Columbia Group of Companies 401(k) Retirement Savings Plan: The CORPORATE*plan for Retirement* 100 Service Agreement (the "Service Agreement"), filed herewith as Ex. B.)[3]  The Service Agreement expressly lists the 38 Fidelity-brand mutual funds chosen by plaintiff as Plan investment options.  (Service Agreement, Appendix A, at A-1.)  It provides:

> All Plan assets must be invested in the Permissible Investments elected by the Employer and identified in Appendix A and are subject to the terms and conditions contained therein.  The Employer may add, delete, or replace a Permissible Investment with another by providing Fidelity with proper written direction at least thirty days prior to the effective date of the change.

(Service Agreement, Article II.5 & Appendix A.)  The Service Agreement memorializes plaintiff's representation to FMTC that it had "accessed" the current prospectus for each of the mutual funds selected on the date that Appendix A became effective.  (Service Agreement, Appendix A, at A-2.)

---

[2]        A true and correct copy of the Plan Document, which is expressly referred to in the Complaint (*see, e.g.*, ¶¶ 12-14, 16, 18), is filed herewith as Exhibit A.   *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (noting that courts may consider documents referred to in the complaint without converting a motion to dismiss into one for summary judgment).

[3]        Like the Plan Document, the Service Agreement is explicitly referenced in the Complaint, and thus may properly be considered under Rule 12.  (*See, e.g.*, ¶ 17-19.)

### III.    Plaintiff's ERISA Claims.

The Complaint alleges that FMTC breached fiduciary duties under ERISA "in that it received, retained and used" a share of fees charged to Fidelity-brand funds by other Fidelity entities.  (Compl. ¶ 34.)  Dubbing the alleged payments "kickbacks," Count I of the Complaint alleges that the payments breached FMTC's fiduciary duties under ERISA § 404, 29 U.S.C. § 1104.  Count II asserts that the same conduct constituted prohibited transactions under ERISA § 406(b), which prohibits a fiduciary both from "deal[ing] with the assets of the plan in his own interest or for his own account" and from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of a plan."  ERISA § 406(b)(1), (3), 29 U.S.C. § 1106(b)(1), (3).  As the sole basis for these fiduciary claims, the Complaint alleges that FMTC "is the Plan's trustee and, therefore, a fiduciary to the Plan."  (Comp. ¶ 1.)

Plaintiff purports to bring its claims on behalf of "a class consisting of all sponsors, administrators and trustees on behalf of all defined contribution retirement plans for which Defendant serves or has served as trustee."  (Compl. ¶ 27.)

### ARGUMENT

### I.    Standard of Review.

Dismissal is proper under Rule 12(b)(6) if plaintiff cannot prove facts that would support its claim for relief.  *Edes v. Verizon Communs.*, 417 F.3d 133, 137 (1st Cir. 2005) (affirming district court's dismissal of ERISA claims).  While the Court accepts plaintiff's well-pleaded facts as true, it need not give any weight to plaintiff's conclusory allegations.  *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 (1st Cir. 2007) ("bald assertions" and "unsupportable conclusions … need not be credited") (citations omitted).  As the Supreme Court recently held, "a plaintiff's

obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

In reviewing this motion, the Court may consider documents of unquestioned authenticity that are referenced in the plaintiff's complaint, are central to the claims, or are official public records. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *see also Edes*, 417 F.3d at 137 (affirming dismissal of ERISA claims when documents attached to defendants' motion showed that plaintiffs were not entitled to the benefits they sought); *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (affirming dismissal of ERISA claims when a document attached to defendants' motion showed that defendant bank was not an ERISA fiduciary). Without such a rule, plaintiffs with legally insufficient claims could escape dismissal merely by failing to attach critical documents to their pleadings. *Id.* at 17.

## II.   Plaintiff's "Kickback" Allegations Do Not State a Valid Claim for "Excessive" or Improper Compensation Under ERISA.

As an initial matter, plaintiff's Complaint should be dismissed in its entirety because plaintiff has failed to adequately allege that FMTC received "excessive" compensation under ERISA. Plaintiff's conclusory assertion that the Plan "overpaid for services" (Compl. ¶ 3) simply does not state a claim. *See Twombly,* 127 S. Ct. at 1965 (holding that a plaintiff must allege "more than labels and conclusions").

Plaintiff's Complaint is notable for what it does not allege. While the Complaint invokes the requirement under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), that a plan's assets be applied for the exclusive purpose of providing benefits and "defraying reasonable expenses of administering the plan" (Compl. ¶ 34), the Complaint does not allege any specific facts suggesting that the compensation received by FMTC—or by Fidelity entities generally—was

unreasonable in comparison to the value of the services provided.  (*See* Employee Benefits

Security Admin., Department of Labor, 401(k) Fiduciary Education Campaign,

http://www.dol.gov/ebsa/fiduciaryeducation.html (follow "401(k) Plan Fee Disclosure Tool"

hyperlink) (last visited Sept. 18, 2007) ("Cost is one of the criteria, but not the only criterion, for

[selecting a service provider]. Other factors of equal or greater importance to consider include

the quality and type of services provided, the anticipated performance of competing providers

and their investment products and other factors specific to your plan's needs.").)  Likewise,

plaintiff nowhere alleges that the compensation received by FMTC or other Fidelity entities was

in excess of what Fidelity's competitors in the marketplace charge for similar packages of

services and products.  *See Brock v. Robbins*, 830 F.2d 640, 644-46 (7th Cir. 1987) (affirming

district court's findings that the service fees paid by an ERISA plan were reasonable based on

evidence that the fees fell within the range that would normally be charged in the market for

similar services).  In short, to the extent the Complaint challenges the reasonableness of FMTC's

compensation under ERISA, it recites mere "labels and conclusions" rather than the specific

facts necessary to avoid dismissal.  *See Twombly*, 127 S. Ct. at 1965.

The only specific factual underpinning for plaintiff's charge that FMTC has received

improper compensation is that the Service Agreement contains an explicit fee schedule for

FMTC and that this explicit schedule prohibits FMTC from receiving a share of any fees earned

by other companies in the Fidelity enterprise as the result of the Plan's investments in Fidelity

mutual funds.  That is, plaintiff claims that fees charged to these mutual funds and allegedly

transferred to FMTC[4] inherently represent an overpayment under ERISA by the Plan for

FMTC's services.  Plaintiff even goes so far as to dub these transfers "kickbacks."  (Compl. 3.)

---

[4]        As FMTC has noted earlier, this allegation is false.

Yet this characterization, like plaintiff's larger overpayment contention, makes no sense in light of the basic structure of plaintiff's Service Agreement with FMTC.

Most fundamentally, the contention ignores that plaintiff agreed in the Service Agreement to select as the Plan's investment options Fidelity-brand mutual funds, and therefore committed that the investment of the Plan's assets would generate other revenues within the Fidelity enterprise. Article II.5 of the Service Agreement requires that the Plan's assets must be invested in "Permissible Investments" selected by plaintiff (and identified in Appendix A to the Service Agreement), and these consist exclusively of Fidelity-brand mutual funds. Article II.2 of the Service Agreement provides that "any Appendices" are "expressly made part of the Service Agreement"; thus, plaintiff's selection of Fidelity mutual funds as investment options was an inseparable part of the bargain between plaintiff and FMTC. In short, the Service Agreement expressly contemplated that the Plan's investment in the Fidelity mutual funds selected by plaintiff would generate additional revenues for Fidelity entities beyond the explicit fees in the schedule.

Moreover, the Service Agreement contains plaintiff's acknowledgement of the fee and expense rates that apply to Plan participants' investments in the Fidelity-only fund lineup chosen by plaintiff. These fee and expense levels are set out in detail, pursuant to the securities laws,[5] in publicly-available prospectuses. (*See, e.g.,* Ex. C, Prospectus for the Fidelity Low-Priced Stock Fund dated September 29, 2006, at 5.)[6] The Service Agreement specifically memorializes

---

[5]     *See* Form N-1A, SEC 2052, at 9, 13-18 (detailing information, including fee and expense information that must be disclosed in a prospectus).

[6]     The contents of the mutual fund prospectuses for the various Fidelity funds are set forth in Forms N-1A that are filed with the Securities Exchange Commission ("SEC") and are accessible through the SEC's searchable database at http://www.sec.gov/edgar/searchedgar/mutualsearch.htm (last visited Sept. 18, 2007).  As public documents submitted to the Securities Exchange Commission, those filings, and thus the contents of the prospectuses themselves, are properly subject to judicial notice on a motion to dismiss.  *See In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 6 n.2 (1st Cir. 1999) (citing with approval *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir.1999) for the proposition that a court may take judicial notice of SEC filings in deciding a Rule

plaintiff's representation that it had "accessed" the prospectuses for the Fidelity mutual funds offered under the Plan *before* selecting those funds and Plan investment options.  (Service Agreement, Appendix A, at A-2; *see also id.* at F-2, § 10 ("[Plaintiff] acknowledges . . . that it has received prospectuses for the Fidelity Mutual Funds available under the Plan, and a full and detailed disclosure of the investment advisory and other fees charged to or paid by the Plan with respect to this Service and the investment company(ies).").)  Plaintiff does not, and cannot, allege that Fidelity's disclosures understated these fund-level fees and expenses or that the mutual fund prospectuses are deficient in any other respect, or otherwise failed to comply with the securities laws.

Thus, plaintiff's Complaint rests on the very technical contention that, though plaintiff understood the total amount of fees and expenses it was committing to pay to Fidelity entities overall, FMTC was barred from receiving from Fidelity affiliates any payment in excess of its explicit fees—in other words, that FMTC's explicit fees were intended to be exclusive.  Yet plaintiff does not identify (nor could it identify) any language in the Agreement precluding FMTC from sharing in revenues earned by other Fidelity entities.  In fact, Article II.9 of the Service Agreement, relating to "Fees," states that, "[a]s consideration for its services under this Agreement, Fidelity shall be entitled to the fees in accordance with Article I, this Article II, and *any Appendices or amendments to this Agreement.*"  (Emphasis added.)  This includes Appendix A, detailing the Fidelity-brand mutual funds selected by plaintiff and acknowledging plaintiff's review of the mutual fund prospectuses, which in turn set forth the funds' fees and expenses.

Nor do the mutual fund prospectuses that plaintiff acknowledged having reviewed provide support for plaintiff's theory.  These disclosures make clear that the fees and expenses

---

12(b)(6) motion); *In re Lernout & Hauspie Sec. Litig.*, 286 B.R. 33, 37 (D. Mass. 2002) (court can take judicial notice of SEC filings pursuant to Fed. R. Evid. 201).

collected from the mutual funds benefit companies in the Fidelity enterprise other than the funds'

investment advisor.  (*See, e.g.*, Ex. D, Statement of Additional Information for Fidelity Low-

Priced Stock Fund, Sep. 29, 2006, at 32, 47.)  And they explain that the mutual funds' fees and

expenses are used by Fidelity to provide services other than pure portfolio management services.

(*See, e.g.*, *id.* at 32-33, 47-48.)

Thus, in entering into its service and investment product package with FMTC, plaintiff

expressly committed the Plan to generate revenue for Fidelity entities beyond the explicit fees in

the Service Agreement's fee schedule, and understood the total compensation that Fidelity

entities would receive (through all sources) in exchange for the total package of services and

investment products the Plan would receive.  Having retained FMTC under those circumstances,

plaintiff's attempt now to characterize a portion of that compensation as "excessive" or as a

"kickback" simply because some of Fidelity's fully-disclosed compensation was transferred

among related Fidelity and allegedly to FMTC entities does not wash.  In short, it makes no

sense to accuse Fidelity of paying "kickbacks" to itself.

## III.   Count I of the Complaint is Independently Flawed Because FMTC is Not a Fiduciary with Respect to the Challenged Conduct.

Even assuming plaintiff had properly alleged that FMTC received "excessive"

compensation for its efforts, the Complaint would still fail due to plaintiff's inability to properly

allege that FMTC is a fiduciary with respect to that compensation.  In dismissing with prejudice

similar claims against FMTC, the district court in *Hecker v. Deere & Co.*, 496 F. Supp. 2d 967

(W.D. Wis. 2007), held that FMTC could not be liable for breaches of ERISA fiduciary duty

because it was not a fiduciary with respect to the conduct alleged in the plaintiffs' complaint.  *Id.*

at 976-77.  Plaintiff here has similarly failed to adequately allege relevant fiduciary authority by

FMTC, and Count I should therefore be dismissed.

"In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). ERISA provides that a person is a fiduciary of a plan:

> *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (emphasis added).  As § 3(21)(A) reflects, a person is a fiduciary only "to the extent" that person performs fiduciary functions.  Thus, someone who becomes a plan fiduciary as to one function is not a fiduciary with respect to other functions under the plan.  *See Pegram*, 530 U.S. at 225-26; *Beddall*, 137 F.3d at 18 ("Because one's fiduciary responsibility under ERISA is directly and solely attributable to his possession or exercise of discretionary authority, fiduciary liability arises in specific increments correlated to the vesting or performance of particular fiduciary functions in service of the plan, not in broad, general terms.").  Accordingly, in order to hold FMTC liable as a fiduciary, plaintiff must first establish that FMTC was acting as a fiduciary to the Plan in undertaking the conduct challenged in the Complaint.  *See Pegram*, 530 U.S. at 226.  Plaintiff cannot and does not do so here.

> **A.     Plaintiff Cannot Establish Relevant Fiduciary Status Based on FMTC's Role as Directed Trustee to the Plan.**

Plaintiff pins FMTC's fiduciary status solely on an allegation that FMTC "is the Plan's trustee and, therefore, a fiduciary to the Plan."  (Compl. ¶ 1.)  However, while FMTC does serve as the Plan's trustee, the Plan Document assigns FMTC only the limited duties of a *directed trustee*.  *See* Plan Document § 20.04 ("The Trustee shall have no discretion or authority with

respect to the investment of the Trust Fund but shall act solely as a directed trustee of the funds

contributed to it.").[7]

Consistent with the First Circuit's recognition that "discretion is a *sine qua non* of

fiduciary duty," *Cottrill v. Sparrow, Johnson & Ursillo*, 74 F.3d 20, 22 (1st Cir. 1996) (quotation

and citation omitted), courts have refused to impose broad fiduciary duties on directed trustees.

*See, e.g., Beddall*, 137 F.3d 12 (affirming dismissal of claims against a trustee on grounds that

because trustee was subject to the direction of another fiduciary, it lacked sufficient authority to

be a fiduciary with respect to the plan's investments).[8]   Indeed, in an ERISA case involving the

allegedly imprudent investment of plan assets, this Court held that FMTC, as a directed trustee,

did not have fiduciary responsibility over the plan's investments and that plaintiffs therefore

could not proceed against FMTC except under the limited theory that it followed directions that

it knew to be contrary to the plan or ERISA.   *Kling v. Fidelity Mgmt. Trust Co.*, 270 F. Supp. 2d

121, 128-32 (D. Mass. 2003) ("*Kling I*").

Plaintiff's claims here do not in any way implicate the narrow range of fiduciary duties

belonging to a directed trustee.   Plaintiff does not allege that FMTC followed *improper*

instructions (which could only have come from plaintiff in the first place).   Likewise, the

Complaint does not allege that FMTC failed to comply with any *proper* directions.   As such,

while the allegation that FMTC "is the Plan's trustee" may establish that FMTC has *some*

fiduciary status, it does not establish that FMTC has any *relevant* fiduciary status with respect to

---

[7]     The Plan Document's use of the term "directed trustee" is in reference to ERISA § 403(a), 29 U.S.C. § 1103(a), which provides a trustee shall have authority to manage and control the assets of a plan "except to the extent that" the plan provides that the trustee is subject to the direction of a separate fiduciary.

[8]     In later decisions, the Court reaffirmed the principle that FMTC, as a directed trustee, could be charged with status as a "fiduciary" only where it had discretion over the matter in question.   *Kling v. Fidelity Mgmt. Trust Co.*, 291 F. Supp. 2d 1, 2-3 (D. Mass. 2003) ("*Kling II*") (rejecting, on motion for "clarification," plaintiffs' argument that FMTC had a "modified" fiduciary duty even if it had no discretion over the matter at issue); *Kling v. Fidelity Mgmt. Trust Co.*, 323 F. Supp. 2d 132, 150-51 (D. Mass. 2004) ("*Kling III*") (rejecting theory that FMTC

the asserted claims.  *See Hecker*, 496 F. Supp. 2d at 977 (holding that FMTC was not a fiduciary with respect to claims that plan provided FMTC and other Fidelity entities excessive compensation through fees paid out of Fidelity mutual funds).

### B.        FMTC Is Not a Fiduciary With Respect to Its Own Compensation.

The Complaint's core allegation is that any fees shared with FMTC by affiliated mutual fund companies necessarily represented an overpayment to FMTC because those amounts came on top of the explicit fees identified in the Service Agreement.  (Compl. ¶ 3.)  As a theory of fiduciary breach, this claim is baseless, because as the Complaint makes clear, that FMTC did not bear fiduciary responsibility for approving or monitoring either the fees paid under the Service Agreement, or the Plan's investment options and their fees and expenses.  Instead, it was plaintiff who had that responsibility.

As federal courts have repeatedly held, a party does not act as an ERISA fiduciary in negotiating the terms of its own retention by a plan, even if it is being retained to serve in a fiduciary capacity.[9]  Indeed, courts have held that a person negotiating a contract with an ERISA plan "has no authority over or responsibility to the plan" because such person is "unable to exercise any control over the . . . [the plan fiduciaries'] decision whether or not, and on what terms, to enter into an agreement with him."  *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir. 1987).[10]  It follows that any role that FMTC played in negotiating the terms of the Service Agreement—including fashioning the schedule outlining the explicit fees it

---

was a fiduciary as to the investment of plan assets, but recognizing FMTC's fiduciary status where it exercised discretion (*e.g.*, in deciding whether the directions it received from other fiduciaries were proper)).

[9]        *See, e.g., Schulist v. Blue Cross of Iowa,* 717 F.2d 1127, 1131-32 (7th Cir. 1983) (holding that defendant insurer could not be held liable as a fiduciary for causing the plan to pay it "unreasonable compensation" where compensation was paid according to contracted rates); *Seaway Food Town, Inc. v. Med. Mut. of Ohio,* 347 F.3d 610, 618-19 (6th Cir. 2003) (holding that HMO's adherence to contractual term allowing it to retain funds resulting from provider discounts did not render HMO a fiduciary under ERISA).

was to be paid (Service Agreement, Article I)—was not a fiduciary role and cannot serve as the basis for fiduciary liability.[11]

Nor can FMTC be considered a fiduciary in selecting investment options for the Plan or, more particularly, in reviewing the fees and expenses associated with those options.  To the contrary, the Complaint specifically alleges that FMTC "did not have the duty to select the final list of investment options available for investment of Plan assets and, in fact, did not do so." (Compl. ¶ 18; *see also* Service Agreement, Article II.5 ("Fidelity shall have no discretion or authority with respect to the investment of the Plan assets but shall act solely as a directed trustee of the contributed funds.").)  Rather, as the Complaint implies, and as the Service Agreement makes clear, plaintiff was responsible for making that selection.  (Compl. ¶ 19 ("Plaintiff selected a number of mutual funds into which Plan assets could be invested . . . ); Plan Document § 8.01; *see also* Service Agreement, Article II.5, Appendix A (requiring that the Plan's assets be invested among "Permissible Investments" consisting of Fidelity mutual funds).  As the fiduciary responsible for selecting the Plan's investment options, plaintiff had the obligation to ensure that each of the mutual funds selected was a prudent investment for the Plan, taking into account the fees and expenses involved.  *See DiFelice v. U.S. Airways, Inc.*, No. 06-1892, 2007 WL 2192896, at *5 (4th Cir. Aug. 1, 2007) ("a fiduciary of a defined contribution . . . plan . . . who is given discretion to select and maintain specific investment options for participants . . . must exercise prudence in selecting and retaining available investment options.").

---

[10]    *See also Seaway*, 347 F.3d at 612, 618-19 (affirming dismissal of fiduciary duty claims, including duty to "disclose the true nature and extent of the provider discounts [the defendant] actually received," because a person is not a fiduciary with respect to the negotiation of terms of his compensation).

[11]    *See Pegram*, 530 U.S. at 226 ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.");  *Kalda v. Sioux Valley Physician Ptnrs., Inc.,* 394 F. Supp. 2d 1107, 1112 (D.S.D. 2005) (noting that "the [c]ourt must examine whether a plan fiduciary was acting in a fiduciary capacity to determine liability for breach of fiduciary duty"), *aff'd*, 481 F.3d 639 (8th Cir. 2007).

As previously discussed, in carrying out its obligations, plaintiff was fully informed concerning the total compensation that would go to Fidelity entities as a result of its arrangement with FMTC—and the Complaint does not allege otherwise.  It was open to plaintiff, at any point in the FMTC engagement, to renegotiate if it believed that the total fees paid to Fidelity entities exceeded the total value of the products and services provided to the Plan.  Indeed, plaintiff had an absolute right to terminate its agreement with FMTC upon 60 days' notice and retain a different vendor if it believed the bundle of products and services available through Fidelity was simply not worth the price.  (Service Agreement Article II.10.)  (The Complaint asserts no facts that even suggest that this was so.  (*See* Section II *supra*.).)

These structural features of the relationship between FMTC and plaintiff confirm that FMTC had no fiduciary status in negotiating the terms of its retention by plaintiff or with respect to the compensation to Fidelity entities that resulted from plaintiff's exercise of discretion.  Plaintiff's unsupported allegation that it "overpaid" for the bundle of products and services it arranged through FMTC (Compl. ¶ 24) does not change the fiduciary analysis.  Indeed, if the Complaint's allegation that the Plan "overpaid" for services and investment products were accepted as true, it is plaintiff, as the Plan's administrator and named fiduciary, who would have fiduciary responsibility and liability for that overpayment.  *See Hecker*, 496 F. Supp. 2d at 976-77 (holding that FMTC could not be held liable for allegedly receiving excessive fees through plan's investment options because it was not a fiduciary "for the purposes of making plan investment decisions[.]").

**C.     Any Fees Paid From the Mutual Funds to FMTC Were Not Plan Assets and So Did Not Give Rise to Fiduciary Status.**

In an attempt to shift fiduciary responsibility for the supposedly excessive fees onto FMTC, plaintiff asserts that the portion of the "Investment Fees" that "managers and brokers" for the Fidelity mutual funds allegedly paid to FMTC constitute "Plan assets."  (Compl. ¶ 23.) The implication is that in receiving and retaining such alleged payments, FMTC was acting as a fiduciary and had an obligation to use the payments for the Plan's benefit.  Again, even accepting as true the erroneous allegation that FMTC received a portion of the fees paid by the Fidelity mutual funds to other Fidelity entities, plaintiff's assertion is wrong as a matter of law.

ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1), provides that when an ERISA plan invests in a security issued by a mutual fund, or "investment company," "the assets of such plan shall be deemed to include such security but shall not, solely by reason of such investment, be deemed to include any assets of such investment company."  In other words, a mutual fund's assets are *not* plan assets, and it follows that any payments from those mutual fund assets—such as the "Investment Fees" paid to mutual fund "managers and brokers," to which the Complaint refers— cannot be considered plan assets either.  It should almost go without saying that if the aforementioned payments from mutual fund assets cannot be considered plan assets when the monies are in the possession of the mutual fund's "managers," the same monies cannot be deemed plan assets simply by virtue of their alleged transfer to FMTC.  To the contrary, any such payments must be considered FMTC's own revenues.

Recently, the Seventh Circuit recognized this critical distinction in its decision in *Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463 (7th Cir. 2007).  *Caremark* involved an ERISA plan that contracted with a pharmaceutical benefit management company ("PBM") to run its prescription drug program.  *Id.* at 466.  The contract

required the PBM to pay the plan rebates, pursuant to a fixed schedule, on prescription drugs obtained from drug manufacturers. *Id.* at 468-69. The plaintiff alleged that the PBM breached fiduciary duties to the plan by retaining rebates from drug manufacturers that were greater than the rebates the PBM had contracted to remit to the plan. *Id.* In holding that the PBM was not a plan fiduciary, the Seventh Circuit rejected an argument that the PBM controlled "plan assets" when it received and applied for corporate purposes rebates based on the purchase of drugs for plan participants. *Id.* at 476 n.6. The Seventh Circuit explained that because the defendant was collecting the rebates for itself rather than on behalf of the plan, it was controlling its "own assets," not "plan assets." *Id.* Likewise, even assuming FMTC received a portion of the "Investment Fees" charged by Fidelity affiliates to the Fidelity mutual funds included as Plan investment options and used those monies for its own purposes, it was controlling its own assets, not plan assets, and was not acting as an ERISA fiduciary.

Plaintiff's fiduciary claim seems loosely derived from the decision in *Haddock v. Nationwide Financial Services*, 419 F. Supp. 2d 156 (D. Conn. 2006), in which the district court, in denying the defendant's motion for summary judgment, rationalized that alleged "revenue sharing" payments to a fiduciary from mutual fund investment fees could potentially qualify as "plan assets." *See id.* at 166. Although FMTC submits that the court's logic in *Haddock* is incorrect and inconsistent with the text of ERISA § 401(b), even if this Court were to follow that logic, the alleged payments to FMTC from the Fidelity mutual funds would not qualify as "plan assets" under the test announced in that decision. The district court in *Haddock* did not hold generally that payments to plan service providers out of mutual fund fees constitute plan assets. Rather, the court crafted a narrower test under which revenue sharing payments received by a defendant are plan assets only if the defendant receives the assets "(1) as a result of its status as a

fiduciary or its exercise of fiduciary discretion or authority, and (2) at the expense of plan participants or beneficiaries." *Id.* at 170.

In *Haddock*, the court had determined that the defendant could be held to have relevant fiduciary responsibility over investment selection, because the defendant, unlike FMTC here, had the *unilateral* right to add and delete mutual funds from the menu of investment options available under the plans at issue. 419 F. Supp. 2d at 161 ("Nationwide retains the authority to delete and substitute mutual funds from the list of available investment options if, in the judgment of [Nationwide], further investment in the shares of a Fund should become inappropriate . . .") (internal quotation omitted). As a result, the court was unable to rule out the possibility that the "revenue sharing" payments resulted from Nationwide's authority, and that the first part of its two-part test might thereby be met. *See id.* at 170 ("The plaintiffs have alleged that Nationwide receives payments from mutual funds in exchange for offering the funds as an investment option to the Plans and participants, *i.e.*, as a result of its fiduciary status or function.").

Plaintiffs have not alleged any such circumstances here. Indeed, they allege precisely the contrary. (Compl. ¶ 18 ("Defendant did not have the duty to select the final list of investment options available for investment of Plan assets and, in fact, did not do so"); *id.* ¶ 19 ("Plaintiff selected a number of mutual funds into which Plan assets could be invested from the list of options provided by Defendant pursuant to the Service Agreement…").) Because FMTC did not have fiduciary control over the selection of the Plan's investment options, any supposed payments to FMTC out of the mutual fund fees cannot be said to have been made "in exchange for offering the funds as an investment option . . ." *Haddock,* 419 F. Supp. 2d at 170. Thus,

even if this Court were to apply *Haddock*, plaintiff would fail to meet the first part of the *Haddock* test for plan asset treatment.

Accordingly, because Plaintiff has failed to establish, and could never establish, a meaningful nexus between FMTC's limited fiduciary role and the allegedly excessive compensation challenged in the Complaint, Count I should be dismissed with prejudice.

**IV.    Count II, Charging FMTC With "Prohibited Transactions," Is Similarly Defective Because Plaintiffs Fail to Allege That FMTC Was a Fiduciary With Respect to the Challenged Conduct.**

Count II, based on the same alleged conduct as Count I, asserts that FMTC violated ERISA § 406(b), 29 U.S.C. § 1106(b), which prohibits transactions that constitute fiduciary self-dealing (dubbed "prohibited transactions").  Plaintiff's claim under § 406(b), however, is subject to the same infirmity as plaintiff's general fiduciary duty claim in Count I.  Namely, because § 406(b) is focused on fiduciary conduct, plaintiff must establish that FMTC had fiduciary responsibility relevant to the challenged conduct.[12]  As discussed above, plaintiff has failed to allege relevant fiduciary status and thus Count II should be dismissed on essentially the same grounds as Count I.

The insufficiency of Count II can be further understood by examining the subparts of § 406(b) that plaintiff contends FMTC violated.  First, plaintiff asserts that FMTC violated § 406(b)(1), which provides that a fiduciary shall not "deal with the assets of the plan in his own interest or for his own account."  Under the express terms of the statute, the viability of plaintiff's claim under § 406(b)(1) depends on its ability to establish that FMTC dealt with Plan assets in a fiduciary capacity.  Plaintiff attempts to satisfy that requirement by characterizing fees allegedly paid to FMTC by the Fidelity mutual funds as "Plan assets" (Compl. ¶ 23) and

---

[12]       *See Schulist*, 717 F.2d at 1131 (noting that the obligations under ERISA § 406 "are all premised upon the assumption that the party whose duty is asserted is a fiduciary under ERISA with respect to the conduct alleged").

contending that in receiving those fees, FMTC was dealing with the Plan's asset for its own

interest (Compl. ¶ 41).  As discussed with respect to Count I, however, plaintiff's conclusory

assertion that fees paid out of the mutual funds' assets are "Plan assets" is wrong as a matter of

law.  *See* ERISA § 401(b)(1).

Second, plaintiff asserts that FMTC violated ERISA § 406(b)(3), which provides that a

fiduciary shall not "receive any consideration for his own personal account from any party

dealing with such plan in connection with a transaction involving the assets of a plan."  Although

facially broad in scope, § 406(b)(3) is nonetheless limited by ERISA's definition of fiduciary,

which, as discussed above, provides that a party is only a fiduciary "to the extent" that it has or

exercises fiduciary authority and control.  ERISA § 3(21)(A).  Consistent with that statutory

definition, the Department of Labor ("DOL"), the administrative agency chiefly responsible for

interpreting and enforcing ERISA's provisions, has opined that "a fiduciary does not engage in

an act described in section 406(b)(3) of ERISA if the fiduciary does not use any of its authority,

control, or responsibility to cause a third party to pay to the fiduciary any compensation in

connection with a transaction involving the assets of the plan."  DOL Adv. Op. 99-03A (Jan. 25,

1999);[13] *Kodes v. Warren Corp.*, 24 F. Supp. 2d 93, 99 n.1 (D. Mass. 1998) ("While [DOL]

advisory opinions are not binding, courts give them great deference.").

DOL has applied this logic in concluding that payments substantially similar to those

alleged in the Complaint did not violate § 406(b)(3).  In DOL Adv. Op. 2003-09A (June 25,

2003), the DOL addressed a circumstance in which a directed trustee to several plans received

fees from mutual funds in which the plans were invested, including mutual funds advised by the

directed trustee's affiliate.  The only role the directed trustee played in the selection of the

---

[13]     For the Court's convenience, copies of the DOL Advisory Opinions cited herein have been filed
contemporaneously with FMTC's Motion as Exhibits E and F.

investment options was its imposition of a requirement, "as a condition of initial engagement," that each plan include at least one fund advised by one of the directed trustee's affiliates. *Id.* Presented with these facts, the DOL responded:

> It is the view of the Department that [the directed trustee's] receipt of 12b-1 and subtransfer fees from mutual funds, including those Proprietary Funds the investment advisers of which are affiliates of [the directed trustee], for services in connection with investment by employee benefit plans in the mutual funds, under the circumstances described above, would not violate section 406(b)(1) or 406(b)(3) of ERISA when the decision to invest in such funds is made by a fiduciary who is independent of [the directed trustee] and its affiliates, or by participants of such employee benefit plans.

*Id.* As in the scenario addressed by DOL, the Complaint does not allege that FMTC or its affiliates made the decision to invest in Fidelity mutual funds, but instead asserts that *plaintiff* selected the Plan's investment options into which participants could direct their Plan contributions. (Compl. ¶¶ 18-19.) Thus, under the DOL's interpretation, FMTC cannot be held to have violated § 406(b)(3) because it did not use its fiduciary authority to cause the Plan to enter into any transaction involving Plan assets.

DOL's interpretation of § 406(b)(3) is not only consistent with the text of ERISA, it is also consistent with the purpose of ERISA's prohibited transaction provisions in § 406. As the Supreme Court noted in *National Labor Relations Board v. Amax Coal Co.*, 453 U.S. 322 (1981), "[t]he legislative history of ERISA confirms that Congress intended in particular to prevent trustees 'from engaging in actions where there would be a conflict of interest with the fund, such as representing any party dealing with the fund.'" *Id.* at 333-34 (quoting S.Rep.No. 93-383, pp. 31-32 (1973), U.S. Code Cong. & Admin. News 1974, p. 4917). Where, as here, the fiduciary responsible for causing a plan to enter into a transaction involving plan assets (*i.e.*, plaintiff) is independent from the party who allegedly received payment from a counterparty to the transaction, no such conflict of interest exists. Simply put, there is no risk of self-dealing or

improper influence on a plan decision where the party allegedly receiving payment is not responsible for the decision that results in payment.

There is no legal basis for Count II, and it should be dismissed with prejudice.

## V.   Regardless of the Fate of Plaintiff's Individual Claims, Plaintiff's Class Claims Must Be Dismissed or Stricken.

Even if plaintiff's allegations stated a viable ERISA claim (they do not), plaintiff would be unable to champion that claim on behalf of a "class." Plaintiff purports to bring its claims not only on its own behalf, but also on behalf of a purported class consisting of "all sponsors, administrators and trustees . . . of all defined contribution retirement plans for which Defendant serves or has served as trustee." (Compl. ¶ 27.) Yet plaintiff alleges ties to only a single Plan that has approximately 100 participants and assets totaling approximately $2 million.[14] In contrast, plaintiff seeks to represent roughly 13,000 other defined contribution plans for which FMTC serves as directed trustee, aggregating more than 10 million participants and over $650 billion in assets, and including over half of the Fortune 500 companies.[15] Each of these other plans has independent fiduciaries charged with the responsibility, under ERISA, to ensure that their plans defray only "reasonable" expenses. While plaintiff, as administrator of the Columbia 401(k) Plan, has standing to bring ERISA claims on that Plan's behalf, it plainly lacks ERISA standing to pursue litigation on behalf of administrators (let alone sponsors or trustees) of plans as to which it is a stranger. And for similar reasons, class litigation on behalf of independent

---

[14]    These numbers are reported in the Plan's publicly-filed Form 5500 report to the Department of Labor, dated August 23, 2006 (attached hereto as Ex. G).

[15]    These statistics may be found on Fidelity's website. (*See* http://personal.fidelity.com/myfidelity/InsideFidelity/NewsCenter/quickFacts/quickFacts.shtml.cvsr (last visited September 20, 2007).) Although the statistics are not referenced in plaintiff's Complaint, "[f]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173 (S.D.N.Y. 2006) (citing Fed. R. Evid. 201(b)); *see also Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (court may consider facts outside the complaint including matters of "public record" or "central to plaintiffs' claims" without converting the motion to one for summary judgment).)

fiduciaries across the country is demonstrably not a "superior" means under Fed. R. Civ. P.

23(b)(3) of resolving the concerns addressed in plaintiff's Complaint.

> **A.  Plaintiff Has No Standing to Assert ERISA Claims on Behalf of Fiduciaries of Plans to Which it is a Stranger.**

As this Court has previously observed in an analogous case, "[s]tanding is a threshold

inquiry and is particularly important . . . where strict application of standing principles is needed

to avoid vexatious litigation and abusive discovery."  *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp.

2d 100, 118 (D. Mass. 2006) (O'Toole, J.).  Here, there can be no question that litigation and

discovery concerning approximately 13,000 plans in which plaintiff has no interest whatsoever

would be vexatious and abusive.  Just as this Court in *Forsythe* strictly applied statutory standing

principles under Section 36(b) of the Investment Company Act, it should strictly apply ERISA's

standing principles here.  And just as this Court dismissed Forsythe's class claims as to all

mutual funds in which the named plaintiffs did not have an interest, it should, under ERISA,

dismiss plaintiff's claims here as to all plans for which plaintiff is not the administrator.

> **1.  Plaintiff Lacks Standing to Bring ERISA Claims on Behalf of Trustees or Sponsors Of Other Plans, Or Even As the Trustee or Sponsor of Its Own Plan.**

Plaintiff brings this action pursuant to §§ 502(a)(2) and (3) of ERISA, 29 U.S.C. §§

1132(a)(2) and (3).  (Compl. ¶1.)  Yet these sections confer standing only on specific classes of

plaintiffs: beneficiaries, participants, fiduciaries, and the Secretary of Labor.[16]  Standing to bring

a claim under §§ 502(a)(2) and (3) is strictly limited to persons falling into one of these four

categories.  *See Cripps v. Life Ins. Co.,* 980 F.2d 1261, 1265 (9th Cir. 1992) ("No one except

plan participants, beneficiaries, fiduciaries, and the Secretary of Labor is expressly authorized by

---

[16]     Sections 502(a)(2) of ERISA specifically provides that: "A civil action may be brought … by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under section 409 [of ERISA]."

§ 1132(a) to bring claims in federal court."); *see also State Street Bank and Trust Co. v. Denman Tire Corp.*, 240 F.3d 83 (1st Cir. 2001).  As the alleged "administrator" of the Plan, and thus a fiduciary, plaintiff has statutory standing to pursue claims on behalf of that Plan.  But plaintiff's bid to proceed on behalf of all plan "trustees" and "sponsors" fails under ERISA's standing provisions; indeed, plaintiff has no standing to proceed as "trustee" or "sponsor" even on behalf of the Columbia 401(k) Plan.

Plaintiff's demand to represent other plan "trustees" fails for the simple reason that plaintiff is not a trustee itself.  To the contrary, the Complaint alleges that FMTC is the "directed trustee" of the Plan.  Without an allegation that it is the trustee of its own Plan, plaintiff does not have the bare bones of Article III standing to assert a class claim on behalf of trustees of other plans.  *See, e.g., Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (the base requirement for constitutional standing is that plaintiff have suffered an injury-in-fact, an invasion of a legally protected interest that is concrete and actual).  Indeed, plaintiff's assertion of claims *against* the trustee of the Columbia 401(k) Plan and at the same time *on behalf of* the trustees of all plans for which FMTC is trustee is absurd.

Plaintiff's assertion of ERISA claims on behalf of "sponsors" fares no better.  "Plan sponsor" is a defined term under ERISA, meaning "the employer in the case of an employee benefit plan established or maintained by a single employer."  ERISA §3(16)(B), 29 U.S.C. §1102(16)(B).  Plan sponsors, as such, are not included in the exclusive list of potential plaintiffs under ERISA §§ 502(a)(2) or (3).  *See* 29 U.S.C. §§ 1132(a)(2) and (3); *see also State St. Bank*, 240 F.3d 83 (employer-sponsors do not have standing to assert claims under ERISA).  Thus, in

---

Section 502(a)(3) specifically provides that: "A civil action may be brought…by a participant, beneficiary, or fiduciary . . . ."

its capacity as sponsor, plaintiff does not have statutory standing at all—even for the Columbia 401(k) Plan.[17]

### 2.   Plaintiff Lacks ERISA Standing to Assert a Claim on Behalf of the Administrator of Any Plan Other Than Its Own.

Plaintiff is a "fiduciary" in its capacity as "administrator" of the Plan, and therefore has statutory standing to bring ERISA claims with respect to its Plan.  But ERISA does not authorize the administrator of one plan, or for that matter any plan fiduciary, to assert claims on behalf of a class of other fiduciaries in different plans in which the named plaintiff fiduciary has no interest whatsoever.  After exhaustive research, FMTC has been unable to locate a single decision expressly holding that there is statutory standing to bring any such claim on behalf of a class of fiduciaries or a class of plans to which the named plaintiff is a stranger.[18]  Indeed, the only decision FMTC has been able to uncover which expressly addressed the statutory standing of the fiduciary of one plan to assert ERISA claims on behalf of a purported class of other, unrelated plans held that no such standing could be asserted.  *See Ruppert v. Principal Life Ins. Co.*, No. 06-cv-906-DRH, 2007 WL 2025233 (S.D. Ill. Jul 9, 2007).

In *Ruppert,* as here, a plan fiduciary brought an action asserting breach of fiduciary duty claims on behalf of a purported class of all employee benefit plans serviced by Principal Life Insurance Company.  In connection with an effort to avoid venue transfer, plaintiff argued that venue in the Southern District of Illinois was proper because the defendant serviced a significant number of unrelated plans in that district.  Rejecting plaintiff's argument, the court determined

---

[17]     In addition, plaintiff does not plead any injury to itself as a sponsor.  As a result, even if statutory standing requirements could be overlooked, plaintiff's claim as sponsor would fail for want of Article III standing.  *See, e.g., Lujan,*  504 U.S. at 560-61.

[18]     The only case FMTC has located that apparently allowed a fiduciary of one plan to assert a claim on behalf of fiduciaries of other plans is *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181 (2d Cir. 2005).  But in that case, which involved the settlement of consolidated class actions, it does not appear as if the district court ever addressed the statutory standing question,

that "the total number of plans serviced by Principal in the District and elsewhere" was

"irrelevant" because plaintiff "lack[ed] standing to sue on behalf of plans of which he is not a

fiduciary." *Id.* at *4.  The court reasoned that

> while Ruppert is a fiduciary of the Plan with standing to sue on behalf of the Plan,
> he does not have standing to sue on behalf of plans of which he is not a fiduciary.
> '[I]n order to have standing to sue under ERISA as a 'fiduciary,' . . . a party must
> be (or have been) not merely a fiduciary of any ERISA plan, but rather, a
> fiduciary of the particular plan victimized by the alleged breach or victimized by
> the alleged breach of fiduciary duty.'

*Id.* (citation omitted).  The same principles of statutory standing apply here.  Plaintiff's status as

the fiduciary of the Columbia 401(k) Plan does not confer upon it standing to assert ERISA

claims on behalf of other fiduciaries of unrelated plans.

Decisions addressing the standing of plan fiduciaries under ERISA outside of the class

action context lend further support to the conclusion that plaintiff has no statutory standing to

assert class claims on behalf of fiduciaries of unrelated plans.  In non-class cases, courts have

routinely limited the standing of plan fiduciaries to bring claims only on behalf of the particular

plans for which they serve as fiduciaries.  As one such court has held, in order to have ERISA

statutory standing, "a party must be . . . not merely a fiduciary of any ERISA plan, but rather, a

fiduciary of the particular ERISA plan victimized by the alleged breach of fiduciary duty."

*Modern Woodcrafts, Inc. v. Hawley*, 534 F. Supp. 1000, 1014 (D. Conn. 1982) (trustees of plan

to which employees had transferred are not permitted to pursue ERISA claims against the

employees' former plan).[19]  This limitation makes good sense.  ERISA plan fiduciaries have

---

and, on appeal, the Second Circuit simply, and explicitly, assumed without deciding that there was statutory
standing.  *Id.* at 199.

[19]  *See also LoPresti v. Citigroup Inc.*, 171 Fed. Appx. 900, 901 (2d Cir. 2006) (to sue under co-fiduciary
liability provision, plaintiff must be fiduciary "of the same plan in which the violations are alleged to have
occurred"); *Ne. Dept. ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d
147, 154 (3d Cir. 1985) (in dispute between two plans over payment of benefits, fiduciary of one plan could not sue
another plan under § 502(a)(3) because ERISA "contemplates 'fiduciaries' suing to enforce the terms of 'the plan,'
meaning the terms of the plan regarding which they have a fiduciary duty"); *Sanofi-Synthelabo Inc. v. Eastman*

independent obligations to their own plans, and allowing a stranger fiduciary to purport to control other plans' interests (whether in litigation or otherwise) would usurp the powers and responsibilities of the fiduciaries to those plans.

While it appears that no court has expressly ruled that a fiduciary of one plan has statutory standing to assert a claim on behalf of fiduciaries of other plans, there is divided authority on the different question of whether ERISA permits the *participants or beneficiaries* of one plan to bring claims on behalf of a class of participants or beneficiaries of other plans. *Compare, e.g., Bradshaw v. Jenkins*, No. C83-77112, 1984 U.S. Dist. LEXIS 20013, at *12 (W.D. Wash. Jan. 30, 1984) (although plaintiff, a participant in and beneficiary of one plan, had standing to sue on behalf of her own plan, she lacked standing to sue under ERISA on behalf of participants and beneficiaries of other plans); *Lee v. Prudential Ins. Co.*, 673 F. Supp. 998, 1004 (N.D. Cal. 1987) (same), *with, e.g.*, *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998) (ruling that ERISA allows class litigation on behalf of participants and beneficiaries in multiple plans provided "the gravamen of the plaintiff's challenge is to the general practices which affect all the plans."); *see also Alves v. Harvard Pilgrim Health Care, Inc.,* 204 F. Supp. 2d 198, 205 (D. Mass. 2002) (relying on *Fallick*), *aff'd* 316 F.3d 290 (1st Cir. 2003). *Fallick* and the other authority that permits beneficiary/participant class claims is of no help to plaintiff here. For one thing, although the reasoning of *Fallick* has been adopted by at least one court in this district, *see Alves*, 204 F. Supp. 2d at 205, the First Circuit has not yet ruled on the question of participant/beneficiary standing to stage class litigation under ERISA.[20]  For another, *Fallick* and

---

*Kodak Co.*, No. 99 Civ. 4888, 2000 WL 1611068 (S.D.N.Y. Oct. 27, 2000) (in suit by plan fiduciary on behalf of new employees against their former plan, plaintiff as fiduciary of its own plan lacked standing to bring suit for breach of fiduciary duty on behalf of a plan of which it was not a fiduciary); *Smith v. Hickey*, 482 F. Supp. 644 (S.D.N.Y. 1979) (plaintiff, although a fiduciary of one plan, did not have standing for purposes of ERISA because it was not a fiduciary of the plan against whose trustees plaintiff asserted claims).

[20]      In a per curium affirmance of the district court's (Saris, J.) opinion in Alves, which concerned "fixed 'copayment' requirements" under health benefit plans, the Court of Appeals stated:  "Standing objections were

its progeny are irrelevant to the extraordinary claim of standing plaintiff presses here.  This action is brought by a plan fiduciary, not a participant or beneficiary, and permitting one fiduciary to step into the shoes of stranger fiduciaries would usurp the very legal rights and responsibilities that ERISA expressly vests in each fiduciary separately.

In the typical participant and beneficiary class actions, like *Fallick*, plaintiffs' goal is to secure benefits under standardized terms of an insurance policy or other standardized benefits practices.  The claims challenge "general practices," *Fallick*, 162 F.3d at 422, and, as a result, are arguably susceptible to class treatment.  In contrast, actions commenced by ERISA fiduciaries involve fiduciary decision-making, which is necessarily individualized and contingent upon specific plan arrangements and specific fact circumstances.  While the "gravamen" of the claims in *Fallick* and its progeny are standardized benefits computation practices common to multiple plans, plaintiff's claims here depend on the contractual arrangements and the purported sharing of fees paid to others which obtain, if at all, to plans separately.  Indeed, each different plan's own fiduciary approves its own fee and service arrangements with Fidelity entities in the first place, has fiduciary oversight responsibilities for its own plan on an ongoing basis, and is expressly authorized by ERISA to commence legal action to enforce the fiduciary obligations of others.  In short, the subject matter of plaintiff's allegations is the legal responsibility of the very fiduciaries plaintiff would displace by asserting class claims.[21]

---

raised by the defendants in the district court and rejected by Judge Saris, but these objections have not been reasserted on appeal and raise no jurisdictional bar, so we do not comment upon them." *Alves*, 316 F.3d at 290.

[21]     Fiduciary practices cannot be generalized from one plan to another especially in the context of fee and service arrangements. After all, plans have different features, fee payments vary, and participant needs differ from plan to plan.  But even if fiduciary practices could be generalized, a class action would not be a permissible vehicle under ERISA through which to pursue generalized fiduciary claims.  The statute does not allow private attorneys general, either as class representatives or otherwise, to bring claims to enforce the fiduciary objectives of multiple fiduciaries.  Rather, ERISA contemplates that the Secretary of Labor, and not private attorneys general, shall broadly enforce the statute.  *See* 29 U.S.C. § 1132; see also H.R. Conf. Rep. No. 93-1280 (1974), reprinted in 1974 U.S.C.C.A.N. 5038, 5188 ("enforcement of the fiduciary provisions [of ERISA] . . . primarily lie with Secretary of Labor").  This is eminently appropriate, since the Secretary of Labor is charged with the public interest, whereas

**B.      Even If Plaintiff Had Standing To Represent Other Plans and Their Fiduciaries, Plaintiff's Class Claims Should Be Stricken As Manifestly Inappropriate.**

Even if plaintiff could meet ERISA's standing requirement and assert claims on behalf of fiduciaries of plans as to which it is a stranger, plaintiff's class claims would still be defective. The Complaint alludes to the "superiority" of a class action (*see* Compl. ¶ 32), implicitly invoking Rule 23(b)(3)'s requirement "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  For the same reason that ERISA is properly interpreted to preclude one plan fiduciary from representing others, however, it is clear that class litigation would be far from the "superior" means of resolving the "controversy" raised by plaintiff's pleadings.

The members of the purported class are administrators of multi-million and billion dollar defined contribution plans, exactly the sort of sophisticated actors who, should they so choose, have the resources to pursue independent legal claims on behalf of their own plans. *See, e.g., Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp,* 149 F.R.D. 65, 74 (D.N.J. 1993) ("each [of the purported class member] is a substantial business capable of litigating for itself."); *see also Hall v. Burger King,* No. 89-0260-civ-KEHOE, 1992 U.S. Dist. LEXIS 18687, at *17 (S.D. Fla. Oct. 26, 1992) (class members were "educated and experienced businessmen who were regularly assisted by professionals in the their business dealings . . . .").  Moreover, the discretionary act of litigating is itself a fiduciary activity, and, accordingly, ERISA imposes upon members of plaintiff's purported class a duty to make informed decisions about when litigation is and is not in the best interests of their respective plans. *See, e.g., Ches v. Archer,* 827 F. Supp. 159, 167

---

private actors, particularly fiduciaries of particular plans, cannot be expected to act on behalf of other fiduciaries who inevitably have interests particular to the circumstances of their own plans.  As one court has put it, permitting private plaintiffs to maintain ERISA actions on behalf of plans in which they have no interest, "would eviscerate the

(W.D.N.Y. 1993) ("The trustees had a duty to investigate the possibility of a lawsuit and other options and to make an informed decision whether to pursue any.  Failure to do so … would, if proved, represent a breach of such duty."); *Henry v. Champlain Enters., Inc.,* 288 F. Supp. 2d 202, 227 (N.D.N.Y. 2003) (same).  The fiduciaries who populate plaintiff's purported class can be presumed to be capable of doing their jobs.

Equally important, the interest of the putative class members in "controlling the prosecution" of plaintiff's legal theories as applied to their own plans, *see* Rule 23(b)(3), is overwhelming.  After all, it is the putative class members themselves who negotiated their own fee and service arrangements with FMTC and selected the investment lineups for each of their plans that plaintiff's claims implicate.  If plaintiff's theories have any validity at all (they do not), they would raise serious questions about whether each member of the putative class has satisfied its own fiduciary duties.  *See*, *e.g.*, *Boca Raton Cmty. Hosp. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 700 (S.D. Fla. 2006) (refusing to certify RICO class action where "hospitals have a strong interest in controlling the prosecution of separate actions"); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 225-26 (D.N.J. 2003) (striking class allegations for defendant class where each defendant fast-food franchise would have "an interest in controlling the course of litigation against it").  For this reason, the question whether to litigate against FMTC, to seek another service provider, to renegotiate their plans' service arrangements, or to take other appropriate actions pursuant to their own ERISA responsibilities, should be left to each fiduciary separately.

Although Rule 23 considerations are generally deferred until the class certification process, including class discovery, has been completed, where, as here, that process would be vexatious and abusive, and where, as here, plaintiff's class claims are futile on their face, courts

---

requirement of standing and invade the sphere of public enforcement delegated to the Secretary."  *Lee,* 673 F. Supp. at 1004.

have not been reluctant to strike the class allegations in connection with motions to dismiss.  *See, e.g., Henry v. Allstate Ins. Co.,* Civ. Action No. 07-1738 (slip op.), 2007 WL 2287817, at *2-4 (E.D. La. Aug. 8, 2007) (granting Rule 23(d)(4) motion to strike where plaintiff could not meet requirements of Rule 23(b)(3)).  "[M]otions to strike are a reflection of the court's inherent power to prune pleadings in order to expedite the administration of justice and to prevent abuse of its process."  *Board of Educ. of Tp. High School v. Climatemp, Inc*., No. 79 C 3144, 1981 WL 2033, at *4 (N.D.Ill. Feb. 20, 1981) (granting motion to strike class allegations).  Since plaintiffs cannot, as a matter of law, meet Rule 23(b)(3)'s superiority requirements, its class claims should be stricken.

## CONCLUSION

For the foregoing reasons, FMTC respectfully requests that this Court enter an order dismissing plaintiff's Complaint with prejudice.  In the alternative, and to the extent plaintiff's individual claims survive dismissal, FMTC requests that the Court dismiss or strike plaintiff's class allegations.

Dated:  September 26, 2007                    Respectfully submitted,


                                               _____/s/ James O. Fleckner_____
                                               James S. Dittmar (BBO #126320)
                                               David J. Apfel (BBO #551139)
                                               James O. Fleckner (BBO #641494)
                                               Alison V. Douglass (BBO #646861)
                                               GOODWIN PROCTER LLP
                                               Exchange Place
                                               Boston, MA  02109
                                               Telephone:  (617) 570-1000
                                               Facsimile:  (617) 523-1231

                                               Robert N. Eccles (*admitted pro hac vice*)
                                               Brian D. Boyle (*admitted pro hac vice*)
                                               Shannon D. Barrett (*admitted pro hac vice*)
                                               Stephen D. Brody (*admitted pro hac vice*)
                                               O'MELVENY & MYERS, LLP
                                               1625 Eye Street, N.W.
                                               Washington, D.C. 20006
                                               Telephone:  (202) 383-5300
                                               Facsimile:  (202) 383-5414

                                               *Counsel for Defendant Fidelity Management Trust Company*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 26, 2007.

/s/ James O. Fleckner
James O. Fleckner
